DANIEL FALLON, PLAINTIFF, v. THE MAYOR, ALDERMEN, ETC., OF THE CITY OF NEW YORK, DEFENDANT.

*Chap. 758, Laws of 1873 — effect of, on leases of armories in New York — Fraud — when can be shown.*

The only effect of section 2 of chapter 758, Laws of 1873, was to remove the prohibition against paying the arrears of rent upon leases of armories in the city of New York, created by section 2 of chapter 9, Laws of 1872, in the cases specified in the said section.

Such section did not take away legal defenses that existed by reason of the invalidity of such leases because made in violation of law, nor did it deprive the city or county of the right to allege fraud and collusion between the lessor and the public officials as a defense to actions upon such leases.

The board of supervisors had no authority to make leases for armories and charge the county with the obligations thereby created, until all the requirements of the act of 1870 (chap. 80), had been complied with.

MOTION for new trial on exceptions ordered to be heard in the first instance at General Term.

*Fred. Smyth,* for the plaintiff.

*J. C. Carter,* for the defendant.

DAVIS, P. J. :

The court below directed a verdict for the plaintiff, and ordered the exceptions on the part of the defendants to be heard in this court in the first instance, suspending judgment in the mean time. The principal exceptions arise upon the request to submit to the jury the question whether the lease on which the action was brought, was procured by fraudulent collusion between members of the board of supervisors and the plaintiff, and upon the several requests to charge on propositions of law. It is obvious that the learned judge by whom the Circuit was held, took this course for the purpose of procuring as speedily as practicable the opinion of the appellate courts upon the legal propositions involved, and especially upon the effect of section 2, of chapter 758, of the Laws of 1873 (Sess. Laws of 1873, p. 1127), upon the rights and obligations of the respective parties to such leases. That section is in

these words : " Nothing contained in any act heretofore passed shall prevent the payment of arrears of rent for armories and drill rooms, in cases in which the board of supervisors, since the first day of January, 1872, shall have authorized the leases of such armories and drill rooms to be canceled and the public use thereof to cease, on condition of the payment of such arrears of rent, or in cases in which the premises shall have been continuously occupied as armories or drill rooms until the present time, or until the expiration of the terms for which the same were leased." It is obvious that the lease on which the plaintiff sues, is within the scope of this provision, because the premises had been continuously occupied to the then present time. The object of this statute is very plain. It is to remove the supposed preventive effect of some previous act or acts of the legislature; and its end is fully accomplished when that removal is produced. By a provision contained in section 2 of chapter 9 of the Laws of 1872, the payment of arrears of rent on all leases and armories, was excluded from the general provisions of the chapter, and in substance prohibited. The second section of chapter 758 of the Laws of 1873, was intended to and does remove this prohibition upon the payment of " arrears of rent," in the cases specified in the section, to wit, where the leases had been canceled by authority of the board of supervisors, and the public use of the demised premises had ceased on condition of payment of such arrears; and in cases in which the premises had been continuously used up to the time of the passage of the law; and in cases where the term of the lease had already expired, and such use had been continued up to the expiration of the term. It took away an obstacle which prevented the payment of such *arrears;* and it applies only to arrears upon leases which had terminated by agreement or by lapse of time, and to *arrears* upon continuing leases when occupation and use had gone on up to the passage of the act. The language used is not apt to take away legal defenses that existed by reason of the invalidity of leases because made in violation of law; nor to deprive the city or county of the right to allege fraud and collusion between the lessor and the public officials, as a defense to actions upon such leases. If the intent had been to give validity to all outstanding leases of armories and drill rooms, and take away all defenses thereto, whether of want

of authority or fraud, language would have been chosen which would have plainly expressed that intent, as might well have been done in fewer words than those of the section under consideration; but pains were taken, by the use of words of well known significancy, to limit the effect of the section to "*arrears of rent,*" and to the removal of an obstacle specially interposed by previous act of the legislature, which *prevented payment of arrears,* in the specified cases. As the rent sued for in this action has all accrued subsequently to the passage of the act of 1873, it is not "arrears of rent" within the descriptive words of that act, and the case stands unaffected by the act. The defendants are sued for an alleged liability of the county of New York, and if an action will lie for such liability, it must be held that the defendants may set up and assert any defense which infected the contract, or affected the right to recover thereon. We think the case should have been sent to the jury upon the question of fraud. In considering this question, it is hardly necessary to say, that, inasmuch as the jury would have had the right to give full faith and credit to all the evidence and testimony on the part of defendants, tending to show fraud, and to have drawn every legitimate inference therefrom leading their minds in that direction, and to have discarded altogether the evidence in denial or explanation of the alleged fraud, we are, since the question has been withheld from the jury, to look at the case as though it stood, so far as this question of fact is concerned, upon the defendant's evidence only. That evidence tended to show that portion of a committee of the board of supervisors, charged with the duty of finding suitable premises for a drill room or armory, were informed that the premises described in this lease were in the hands of a party ready to lease them to the county for at most $10,000 per annum. That one member of the committee had a brother-in-law, the plaintiff, who was employed in the office of the mayor as server of corporation notices. That soon after information was given two members of the committee that the premises could be had for $10,000, this brother-in-law of one of those to whom such information had been given, took a lease to himself of the premises for ten years, at an annual rent of $9,500, from January 1, 1873. That two days afterward the committee reported in favor of renting the same premises from the brother-in-law of one of the committee,

for the same term of ten years, at an annual rent of $14,000 and all taxes; and a resolution was passed on the same day to rent on those terms; and on the same day the lease was executed between the plaintiff, who was and is the brother-in-law of one of the committee, and the board of supervisors. A jury would certainly have been justified in scanning this transaction with a jealous eye, and perhaps in concluding that it was a snug and shrewd little job to secure to the plaintiff a comfortable income of $4,500 per annum for ten years, at the expense of the tax-payers of the city; and it is quite possible they might have believed and found that it was brought about by collusion between the plaintiff and some of the officials connected with the affair, and so have stamped the transaction as a fraudulent one. The collusion of the plaintiff with any one or more of such officials would have been a fraud upon the county, and the fact that such collusion and the circumstances attending the procuring of the lease were unknown to the board of supervisors as a board, would not diminish the fraud on plaintiff's part, but would rather intensify it by necessarily involving the concealment of the collusive action of a part of the committee with himself. We think the motion for a new trial should be granted on this point.

The powers of the board of supervisors to make leases of this kind, and charge the county with the obligations thereby created, were specifically defined by acts of the legislature. They could only act in that regard in the execution of a duty which the statute imposed, and that duty could arise or exist only on it appearing that the preliminary requirements of the act of 1870 had been complied with. (Laws of 1870, chap. 80, vol. 1, pp. 217–248.)

The lease was made in 1872, for a term to commence on the 1st of January, 1873. It was an original lease, and not the renewal of one made under previous laws, and the resolution of the 19th of December, 1872, passed three days after the making of the lease, and before the commencement of the term, transferring the sixth regiment of the New York State national guard to the leased premises, furnished a strong presumption that the lease was made for the use of that regiment. The effort to uphold the authority upon papers prepared on the application of the ninety-sixth regiment in 1864, was not satisfactory. That regiment never occupied

the premises, nor was it connected with them otherwise than by an application on the 16th of December, 1872, by the commanding officer of that regiment, which the subsequent action of the board shows, was not acceded to. Enough, we think, was not shown by the plaintiff, to authorize the action of the board in making the lease ; but as there must be a new trial on the question of fraud, it is not so material to analyze and examine this question at length, as upon the new trial it may be presented upon other and different evidence. The occupation of the premises by the sixth regiment, as shown, was not such a ratification of the lease as makes it obligatory on the county or city. There would be no protection for the corporation of New York, if the doctrine of ratification which is applied to private persons and corporations, was held to be applicable. We have often held to the contrary, and cannot therefore give validity to a lease void for want of authority to make it, or for fraud in making it, because of the occupancy and use of the premises by some regiment assigned to them. It is another question whether any, and what liability can grow out of such occupancy.

The motion for a new trial should be granted, with costs to abide the event.

DANIELS, J., concurred.

Motion granted, costs to abide event.